**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 3:23-CR-229 (OAW) |
| | : | |
| RAMONA ESPINOSA, et al. | : | |

**OMNIBUS RULING**

**THIS ACTION** is before the court upon Defendant Liriano's Motion to Suppress, ECF No. 116, and the motions in limine filed by Defendant Manuel Liriano, ECF Nos. 147, 150, and 192, and by the government, ECF No. 153. The court has reviewed the motions, the parties' responses and replies thereto,[1] *see* ECF Nos. 176, 178, 181, and the record in this matter, and is fully apprised in the premises. For the reasons discussed herein, the Motion to Suppress is **DENIED,** and the motions in limine are **GRANTED in part** and are **DENIED in part.**

## I. MOTION TO SUPPRESS

The court presumes familiarity with the facts of the case. Briefly stated, Mr. Liriano and two codefendants have been charged with participating in an alleged drug trafficking conspiracy. Liriano asks the court to suppress all evidence obtained during a search of his Apple iCloud account pursuant to a warrant, asserting that both the search itself and the warrant which authorized it violated the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and

[1] Mr. Liriano is the only defendant who filed any motions in limine and the only one who responded to the government's motions in limine.

effects, against unreasonable searches and seizures" and it prohibits the issuance of warrants without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Warrant-based searches are presumptively reasonable. *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023). "Nevertheless, where the presumption is overcome, even evidence obtained pursuant to a warrant can be suppressed." *Id.*

Specifically, Mr. Liriano argues that: (1) the January 2025 warrant issued upon a deceptive affidavit; (2) the warrant was not sufficiently particularized; and (3) the search exceeded the scope of the warrant.

**A. <u>The Affidavit</u>**

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978), *Lauria*, 70 F.4th 106, 124-125. Thus, a defendant seeking "[t]o suppress evidence obtained pursuant to an affidavit containing erroneous information" must satisfy state of mind and materiality requirements by showing that "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *Lauria*, 70 F.4th 106, 125 (alteration in original) (internal quotation marks and citation omitted). Liriano fails in both regards.

Mr. Liriano contends that the affidavit pursuant to which the search warrant was obtained contained two material falsehoods: (1) it stated that a conversation that he witnessed was about fentanyl, when fentanyl never was mentioned in that conversation, and (2) it failed to state that he and his mother also imported and sold counterfeit male performance enhancement supplements. As to the first alleged misrepresentation, the referenced conversation transpired between a confidential source ("CS") and occurred several weeks after the CS already had made one controlled purchase of pills. The conversation discussed the quality of the pill purchased. At the time of the conversation, those pills already had been tested and were found to contain fentanyl. So, while the CS discussed the pills generally, to state in the affidavit that the discussion was of *fentanyl* pills was no misrepresentation at all, and therefore that statement provides no basis upon which to invalidate the resulting warrant.

As to the allegation of a material omission from the affidavit, even presuming (without deciding) that the affidavit deliberately or recklessly failed to state Mr. Liriano's other import activities, Mr. Liriano has failed to show that the omission was necessary to the issuance of the warrant. Inclusion of the other activities in the affidavit would not have countervailed the rest of the evidence presented therein, specifically, that Mr. Liriano referred the CS to his codefendant in the first place, which referral resulted in the confirmed sale of pills containing fentanyl, following which there was a conversation in Mr. Liriano's presence about those fentanyl pills. ECF No. 119-3 ¶ 16. The allegations in the warrant are sufficient to support its issuance, even if Mr. Liriano also sold other counterfeit supplements.

Thus, there is no deficiency in the affidavit requiring suppression of the iCloud evidence.

**B. <u>Particularity</u>**

The Fourth Amendment requires a warrant to state, with particularity (and without overbreadth), the items sought and the places to be searched. U.S. Const. amend. IV. "[T]he particularity requirement 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)); *see also United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017). "The manifest purpose of this particularity requirement was to prevent general searches." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). "To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal citations and quotations omitted), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).

The court finds that all these requirements are satisfied here. The affidavit that led to the issuance of the January 2025 warrant indicated the crimes of which Mr. Liriano had been indicted by a grand jury, thus establishing probable cause to believe Mr. Liriano had

trafficked in fentanyl. ECF No. 119-3 ¶ 4. Further, the warrant described what was to be searched: the contents of Mr. Liriano's iCloud account. *Id.* at 3 (Attachment A to the application for a search warrant). Finally, the warrant does specify the items to be seized, including temporal limitations as to certain types of files that could be seized, *id.* at 4–8 (Attachment B to the application for a search warrant), and those items do bear relevance to the charged crimes. Therefore, the court finds that the search warrant passes constitutional muster.

Mr. Liriano's arguments to the contrary are unavailing. He contends that the warrant authorized a search of certain content types within his iCloud account without any temporal restriction, rendering the search so broad as to constitute a general search. But the court disagrees. As the United States Court of Appeals for the Second Circuit several times has stated, "it is important to bear in mind that a search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. As long as a broad search of a finite space (whether physical or digital) bears a reasonable relation to the crimes being investigated, a broad search still will satisfy the particularity requirement. *Id.* at 99–100 (stating "that warrants that fail to 'link [the evidence sought] to the criminal activity supported by probable cause' do not satisfy the particularity requirement because they 'lack[ ] meaningful parameters on an otherwise limitless search' of a defendant's electronic media.") (quoting *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010)) (alterations in original). The court notes that a complete search of Mr. Liriano's residence was authorized on similar allegations as those presented in the January 2025 application, which search Mr. Liriano does not question. *See generally,* ECF No. 119-2; *see also*

*Ulbricht,* 858 F.3d at 100 ("[S]earches of computers may sometimes need to be as broad as searches of residences pursuant to warrants."). Indeed, it is the nature of a drug trafficking organization to devote considerable efforts to concealment, which oftentimes justifies such broad searches of physical spaces.

Acknowledging that digital spaces are considerably different from physical ones, and that constitutional protections still fully apply despite those differences, the court nevertheless finds that the instant search was constitutional. Law enforcement had evidence showing that Mr. Liriano carried out his alleged involvement in the drug conspiracy through use of his phone. Specifically, cell site data showed that his telephone traveled with him when he engaged in suspected conspiracy activity, and his telephone number was registered with his iCloud account. ECF No. 119-3 ¶¶ 24, 27. Thus, the evidence sought from the contents of the iCloud account did link to the alleged criminal activity. *See United States v. Manuchekhri*, No. 25-CR-0088 (HG), 2026 WL 947658, at *3 (E.D.N.Y. Apr. 8, 2026), *reconsideration denied*, No. 25-CR-0088 (HG), 2026 WL 2225614 (E.D.N.Y. Aug. 3, 2026) (finding no constitutional violation where "the supporting affidavits establish, with at least a fair probability, that Defendant used particular phone numbers, connected to the iCloud accounts at issue, to facilitate the alleged conduct at the core of this case."). And while there may be circumstances in which additional parameters on a search of an iCloud account in a drug trafficking investigation may be necessary, here, the iCloud account at issue had only been active since February 2021, ECF No. 119-3 ¶ 12, which was less than two years before the period of the conspiracy (as initially charged, at least; the court recognizes that the superseding indictment

extended the period of the conspiracy by several years, *see* ECF No. 196). This is not an unreasonable period of time to look back in an investigation into a conspiracy which "must have involved some degree of coordination and planning . . . ." *United States v. Valentin*, No. 23-CR-292 (RPK), 2025 WL 1519116, at *13 (E.D.N.Y. May 28, 2025) (upholding a search of an iCloud account predicated upon a warrant without temporal restrictions where the account was active approximately 19 months prior to the alleged crime).

For these reasons, the court rejects Mr. Liriano's challenge to the particularity of the warrant.

### C. <u>The Good Faith Exception</u>

Even if the warrant did authorize an overbroad search, however, the court still would decline to suppress the evidence that resulted therefrom. The Supreme Court of the United States has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial," to "safeguard Fourth Amendment rights generally through its deterrent effect." *Herring v. United States*, 555 U.S. 135, 139–40 (2009). However, exclusion is a "last resort," and not a "first impulse." *Id.* "The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* (citation omitted). The exclusionary rule's deterrence value "justifies its cost when police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Raymonda*, 780 F.3d 105, 117–18 (2d Cir. 2015) (quotations omitted). Conversely, "when police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct

involves only simple, isolated negligence," exclusion is not warranted because there is "nothing to deter." *Id.* (quotations omitted). The good-faith exception fails to apply only "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Clark*, 638 F.3d 100 (internal quotation marks omitted).

Here, the court already has found that there were no misrepresentations made to the issuing magistrate judge, there is not even the allegation that said issuing judge operated outside his judicial role, the warrant clearly was supported by probable cause, and though Mr. Liriano contends that the warrant was obviously deficient on its face, the court disagrees, as his argument rests upon the conclusion that the warrant contained misrepresentations, which the court already has declined to adopt.

Accordingly, the court finds that the good-faith exception would apply to the search of Mr. Liriano's iCloud account even if there were deficiencies in the warrant.

### D. <u>The Search</u>

Finally, the court also rejects Mr. Liriano's contention that law enforcement seized more than was permitted by the warrant. He raises a single point in support of this argument: that the government produced in discovery evidence of a conversation Mr. Liriano had over WhatsApp in 2021. In that conversation, Mr. Liriano explores the possibility of purchasing a pill-crushing machine from overseas. He contends that this conversation can have nothing to do with the alleged conspiracy, since it occurred in

September 2021 (two years before the onset of the then-charged conspiracy), and it did not include the codefendants. But the court disagrees that these points are dispositive of the relevance of the conversation to the alleged conspiracy. For purposes of a drug trafficking investigation, whether an individual conspirator possessed a pill-crushing machine is highly relevant, and thus his inquiries into his purchase of such a machine prior to the alleged conspiracy are relevant to that conspiracy as to Liriano's knowledge of the machine and its purpose, his possession of said machine, and perhaps his intent related to its usage. This argument therefore also fails, and the Motion to Suppress therefore is denied.

## II. MOTIONS IN LIMINE

It is well-settled that federal district courts have inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 (1984). Hence, they consider motions in limine "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A ruling on a motion in limine is subject to change during trial, particularly if the evidence differs from the original proffer. *Luce*, 469 U.S. at 41–42. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id*. "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Byrne v. Yale Univ., Inc.*, No. 3:17-CV-1104 (VLB), 2020 WL 5258998, at *2 (D. Conn. Sept. 3, 2020).

Defendant Liriano moves to exclude a Department of Labor ("DOL") report and certain statements by two yet-unidentified sources.[2] The government moves (1) to be allowed to make an opening statement, (2) to sequester all witnesses except for the case agent, Daniel J. Lowndes, (3) to admit recordings and translations of the same, (4) to admit co-conspirator statements; (5) to preclude Defendant Liriano from presenting "good-character" evidence; (6) to admit self-authenticating documents, and (7) to preclude the admission of self-serving hearsay. Defendant Liriano does not object to the request for opening statements, nor to Agent Lowndes's presence during other witnesses' testimony at trial,[3] nor to admission of self-authenticating documents, and so those motions are granted, subject to relevant and applicable objections in the course of trial. And since the government did not respond to the motion to exclude the DOL documents, the court deems those arguments conceded, and hereby grants that motion.[4] The court addresses the remaining motions seriatim.

### A. <u>Hearsay</u>

Three motions in limine simply request to exclude hearsay evidence. Mr. Liriano moves to exclude statements made by non-witnesses, and the government argues that the defendants should be prohibited from offering their own prior statements (such as

---

[2] Defendant Liriano also moves to exclude evidence of certain prior bad acts, but the court defers ruling thereupon, pending the government's submission of its bill of particulars. *See* ECF No. 240.

[3] While Liriano reasonably requests that his investigator be permitted to sit at counsel's table for parity, the court notes that the logistics of a potential three-defendant trial may limit the space this might require. Thus, the court defers resolution of this matter until the pretrial scheduling conference. In a previous multi-defendant trial before the undersigned, defense investigators did not wish to be present for the entire trial and also wished to be permitted to enter and exit the courtroom while court was in session, and so they wound up sitting in the front row of the audience, accessible to counsel but able to come and go without distracting the jury or disrupting the trial.

[4] Defendant Liriano challenges the relevance and authenticity of these documents, and the court will not speculate as to the government's position on those points.

recorded phone messages) without testifying in court, subject to cross-examination, as this would make them hearsay. In response to these motions, the court simply confirms that the rules of hearsay (along with all other Federal Rules of Evidence) will apply at trial, thus the parties are cautioned to adhere to the same. After all, there are non-hearsay options to introduce much of this evidence via admissible testimony. *See, e.g.,* ECF No. 149 at 1, ¶ 2 (suggesting someone has personal knowledge of related criminal acts).

**B. <u>Good-Character Evidence</u>**

The government asks the court to prevent Mr. Liriano from presenting evidence "that Mr. Liriano and Ms. Espinosa were involved in the selling [of] . . . prescription . . . pills . . . that do not contain any fentanyl," ECF No. 153 at 1 (citing ECF No. 118 at 4–7), contending that it would constitute inadmissible "good-character" evidence.[5]

Setting aside that the government does not appear to suggest that such sales would be legal, *see* ECF No. 153 at 4 (referring to drugs which "did not contain fentanyl"), 5 (seeking to prohibit Defendants Liriano and Espinosa from attempting "to establish their innocence through proof that . . . they engaged in the distribution of pills that did not contain any fentanyl. . . ."),[6] Mr. Liriano opposes the government's motions in limine (and argues for the admissibility of such testimony), attesting that such evidence "is essential to [his] defense . . . regarding . . . the nature of the pills" at the heart of the charged crimes,

---

[5] The government also cites legal protections against juror confusion, *see* ECF No. 153 at 3–4, but does not argue why that might be a concern here, *id.* at 4–5, and so the court declines to address that issue. Any juror confusion in this space would seem to stem only from the broad, vague superseding indictment. *See* ECF No. 240.

[6] Indeed, Mr. Liriano himself suggests that such conduct would be criminal, *see* ECF No. 118 at 8 (discussing how generic versions of certain prescription drugs are "routinely counterfeited or smuggled and sold through informal retail channels"), 9 (referring to drugs being "illegally sold outside licensed pharmacies," resulting in "numerous prosecutions" by the Department of Justice).

ECF No. 159 at 1. As such, Liriano appears to be attempting to defend against the specific conduct charged in the superseding indictment which presently spans a period of approximately ***nine years,*** from January 2015 through December 2023. *See* ECF Nos. 196, 240. If that is the case, then such evidence would be both relevant and beyond mere "good character" evidence, thus allowing the jury to consider it in determining whether the government has proven its case beyond a reasonable doubt. Said another way, if Mr. Liriano wishes to argue to the jury that he was not involved in the illegal distribution of fentanyl because he was involved in the illegal distribution of *other* drugs, then that is his prerogative, and the court will not judge the reasonableness nor the persuasiveness of that strategy. However, the court agrees with the government that the defendants are precluded from presenting evidence that "on ***other*** occasions they engaged in the distribution of pills that did not contain any fentanyl." ECF No. 153 at 5 (emphasis added); *see also id.* at 4. But the court notes its assessment of this issue was frustrated by the government's vague and broad expansion of the allegations in this case (by way of the superseding indictment which followed its predecessor by some thirty months and which widened without specificity the temporal scope of the charges by some ***eight years***). *See* ECF No. 240.

**C. <u>Co-Conspirator Statements</u>**

Finally, the government seeks to admit statements made by the defendants against each other as co-conspirator statements. Under Rule 801(d)(2)(E), a co-conspirator's statement is admissible provided the court finds "by a preponderance of the evidence '(a) that there was a conspiracy, (b) that its members included the declarant and

the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.'" *United States v. James*, 712 F.3d 79, 105 (2d Cir. 2013) (quoting *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir.2011)). The evidence supporting such a finding must be independent of the alleged co-conspirator's statement. *United States v. Terry*, 702 F.2d 299, 320 (2d Cir. 1983) ("[T]he trial judge must be satisfied by a fair preponderance of the independent non-hearsay evidence that the defendant was in fact a member of the conspiracy.").

Defendant Liriano asserts that the government cannot satisfy this standard because there is insufficient evidence to show that he participated in a conspiracy to traffic fentanyl in the first place.

The court disagrees. Part of Defendant Liriano's own defense is that he was a participant in a conspiracy to traffic in various other goods, including substances intended to enhance male sexual performance, so there certainly was a conspiracy. Furthermore, there is evidence that the other co-conspirators in that alleged conspiracy also were dealing fentanyl. The court posits that this alone may be enough to satisfy the relevant standard. "Once a conspiracy has been proved to exist, the evidence needed 'to link another defendant with it need not be overwhelming.'" *United States v. Terry*, 702 F.2d 299, 320 (2d Cir. 1983) (quoting *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980)). But the court need not so find because the government also has evidence, *see, e.g.,* ECF No. 119-3 (sealed search warrant affidavit, as attached under seal to Mr. Liriano's motion to suppress, ECF No. 116) that Mr. Liriano referred to his codefendant an individual seeking fentanyl (the CS), that the CS did in fact purchase fentanyl from the

codefendant, and that Mr. Liriano was present for a conversation regarding the potency of the purchased drugs. Mr. Liriano appears to have an alternative explanation for this independent evidence, but for the purpose of this preliminary analysis, it is not "necessary in this circuit that such independent evidence be inconsistent with all reasonable hypotheses of innocence . . . ." *United States v. Ragland*, 375 F.2d 471, 477 (2d Cir. 1967). At this point, the government's intended evidence is sufficient for the court to find that Mr. Liriano's involvement in a conspiracy to traffic fentanyl is more likely than not, and thus the statements of co-conspirators in the charged conspiracy presumptively are admissible against Mr. Liriano. Of course, this is only a conditional finding advanced for the purpose of ruling upon this motion in limine. A final determination will be left to trial, dependent upon the evidence ultimately admitted. All evidence remains subject to appropriate objections during trial.

As to Mr. Liriano's argument that co-conspirators' statements still should be excluded as overly prejudicial under Rule 403, the court again disagrees. His argument on this point appears to be that the co-conspirators' statements might incriminate him. But a jury is permitted to infer Mr. Liriano's guilt from any of the evidence presented, including co-conspirators' statements. Said plainly, damning, admissible evidence is permitted to lead to a conviction. And to the extent the jury somehow improperly may attribute the codefendants' intentions and actions to Mr. Liriano, such danger adequately can be addressed through proper limiting instructions, on which the parties are free to propose suggestions.

### D. Recordings and Translations

A significant amount of the evidence in this case is in Spanish. The government asks that English translations thereof be admitted into evidence and that the jury be instructed that the admitted translations are the only permissible interpretation of the Spanish evidence. The government proposes to confer with the defendants to identify any contested translations and that in any such instances, the jury be given transcripts of each interpretation, leaving them to determine which, if either, is accurate. *See* ECF No. 153 at 18. Mr. Liriano appears to agree, but also demands an opportunity to challenge the government's translations through "competing transcripts or expert testimony." ECF No. 159 at 24.

Therefore, the court instructs the parties to confer as to any translated anticipated evidence and to timely docket notice of any contested excerpts so that the court can take appropriate action thereupon.

## III. CONCLUSION

For the foregoing reasons, it hereby is **ORDERED and ADJUDGED** as follows:

1. Defendant Liriano's Motion to Suppress, ECF No. 116, is **DENIED.**
2. The parties' motions in limine, are **GRANTED in part, but DENIED in part:**
    a. Brief opening statements will be permitted;
    b. Agent Lowndes shall be exempted from any order of sequestration; and
    c. Subject to applicable and appropriate objections made at trial,
        i. Self-authenticating documents may be admitted in

accordance with the Federal Rules of Evidence;

ii. Mr. Liriano may present evidence pertaining to his alleged involvement in the sale of pills not containing fentanyl (though *not* as to occasions beyond the charged crimes in this case);

iii. The government may treat Mr. Liriano as a co-conspirator in presenting evidence which otherwise might be hearsay;

3. The parties shall confer and identify any contested translations, docketing them on or before **December 31, 2026.**
4. The parties' motions to seal, ECF Nos. 117, 132, 148, 151, and 194, are **GRANTED**. Pursuant to Local Rule of Criminal Procedure 57(b)(3)(A), the court finds that good cause exists to seal their related exhibits, which the parties already have filed under seal. Specifically, the court finds that the exhibits contain presumptively confidential investigatory and Grand Jury evidence. Further, the court finds that currently there is no ascertainable date by which the documents may be unsealed. Therefore, the currently-sealed docket entries shall remain under seal until further order of the court.
5. Given the developments in this case, the parties hereby are re-referred to United States Magistrate Judge Maria E. Garcia for another hearing pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012).

**IT IS SO ORDERED** at Hartford, Connecticut, this 23rd day of November, 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE